UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BARRY BASTIAN,                                    :
                                                  :
                              Plaintiff,          :        04 Civ. 7450 (PAC)
                                                  :
             - against -                          :
                                                  :        OPINION AND ORDER
NEW YORK CITY DEPARTMENT OF                       :
EDUCATION , and JOEL I. KLEIN,                    :
CHANCELLOR,                                       :
                                                  :
                              Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Barry Bastian brings claims of gender, age, and race discrimination and

retaliation, pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§

1681 et seq. ("Title IX"), the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"), the Age

Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA"), and

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), as

well as a state common law contract claim, against Defendants New York City

Department of Education ("DOE") and Joel I. Klein, Chancellor ("Defendants").[1]

Plaintiff, a tenured educator and former head coach of the boys' track and field

program at Port Richmond High School ("PRHS") in Staten Island, New York, alleges

disparate treatment and disparate impact arising from:  (1) his allegedly inferior

compensation as compared to female coaches; (2) the allegedly inferior funding of the

boys' track team in comparison to other girls' sports teams; and (3) adverse actions taken

---

[1] Plaintiff's Second Amended Complaint states a claim for human rights violations under New York
Executive Law, Article 15, § 296(1), as well as common law tort claims for defamation and tortious
interference with contract.  Counsel for Plaintiff agreed to withdraw these claims at oral argument on
March 25, 2008.

against him by school management, including his termination as the boys' track coach. He also alleges retaliation within the meaning of Title VII and Title IX based on: (1) his termination as the boys' track coach, ostensibly for complaining about unequal funding; and (2) his reassignment to a non-teaching position and the filing of disciplinary charges, purportedly as retribution for his initiation of this lawsuit. Finally, he claims that, by taking such actions, Defendants breached the implied covenant of good faith and fair dealing.

Defendants now move for summary judgment on all claims, contending that: (1) the various non-retaliation Title VII and ADEA claims are time-barred; (2) the equal pay claim is unsupported and frivolous; (3) Plaintiff's Title IX discrimination and retaliation claims relating to his termination as track coach are not supported by credible evidence; (4) Plaintiff fails to establish a causal connection sufficient to support his Title VII and Title IX retaliation claims based on his reassignment; and (5) Plaintiff failed to satisfy the notice of claim requirements applicable to state common law claims brought against the DOE. Defendants maintain throughout that Plaintiff was not subjected to any form of discriminatory treatment and that any subsequent actions taken against Plaintiff were for legitimate, non-discriminatory reasons.

For the reasons set forth below, Defendants' motion is granted and Plaintiff's claims are hereby dismissed.

## BACKGROUND[2]

Plaintiff is a 58-year-old African-American male. Prior to his reassignment in January 2006, Plaintiff taught health and physical education courses at PRHS for

---

[2] Unless otherwise noted, the facts are drawn from the parties' Local Civil Rule 56.1 Statement of Undisputed Material Facts. For analysis of Plaintiff's statement of facts, see infra Discussion Part II.

approximately thirty-one years.  Plaintiff also served as the boys' track and cross-country coach from 1977 until his removal from that position on February 27, 2003.

**A.  Funding of Athletics Program at PRHS**

Much of the present controversy is tied either directly or indirectly to the compensation of coaches and the funding of the various athletic programs at PRHS. Plaintiff concedes that all coaches at PRHS are paid at the same hourly rate, irrespective of experience, race, age, gender, or sport.  That amount is set per the terms of the Collective Bargaining Agreement ("CBA") between Plaintiff's Union—the United Federation of Teachers—and the DOE. (See Declaration of Ivan A. Mendez, Jr. ("Mendez Decl."), Ex. B, CBA Article 15A; Ex. C, Miscellaneous UFT Rates 2003-2007 Contract.)  The maximum number of compensable sessions for each sport is set forth in Article 15A of the CBA. (Mendez Decl., Ex. B.)  Plaintiff contends, however, that his overall pay was lower than that of other coaches because PRHS Athletic Director, Susan Rossi, allocated the track and cross-country teams comparatively fewer sessions.  Rossi, who also serves as Assistant Principal of Health and Physical Education, was hired in 1997.  Plaintiff's allegations coincide with Rossi's tenure as his superior.

It is clear that many of the coaches at PRHS were dissatisfied with the funding for their respective teams.  Rossi testified at her deposition that Plaintiff and his fellow coaches complained to her about funding from "day one." (Mendez Decl., Ex. D, 54:25-55:3.)  Principal Robert J. Graham, who also played a role in formulating the school's athletic budget, testified that Plaintiff brought similar complaints to him on a number of occasions.  Plaintiff confirmed that he had complained about insufficient funding throughout his twenty-six years of coaching at PRHS.

Between 2000 and 2004, PRHS maintained 30 to 32 athletic teams per year. Both Assistant Principal Rossi and Principal Graham testified that they allocated funds to PRHS's teams based on: (1) the number of students on each team, and (2) the team's needs and requirements. During that time, only budgets for football and baseball, which have both varsity and junior varsity squads and significantly more participants, ever exceeded the boys' track team budget. The budget for the boys' track team equaled or exceeded the budget of each girls' team, irrespective of sport, for those years. The boys' and girls' track team budgets were identical. The gymnastics team, which Plaintiff uses for Title IX comparative purposes, received $2,250 less than the boys' track team per year.

**B. Plaintiff's Misconduct and Termination as Boys' Track and Field Coach**

Plaintiff accumulated eight letters of reprimand for various transgressions in the six years preceding his removal from the coaching position in 2003. Plaintiff was counseled on several occasions regarding his repeated failure to supervise track students in the gymnasium, the school hallways, the classroom, and at a nearby park. He had a verbal altercation with the father of a runner in which he told the father to "go to hell." Plaintiff violated Public Schools Athletic League ("PSAL") rules by entering an academically ineligible student in a track meet, entering a student in a track meet under another student's name, and permitting a student to run without eligibility verification. He also conceded that, in contravention of school policy, he had approached at least two teachers and suggested that they alter student athletes' grades to preserve their eligibility for competition.

On February 27, 2003, Principal Graham terminated Plaintiff's position as track coach citing a "pattern of disregard" for the Athletic Department rules and regulations.[3] Plaintiff was fifty-three years old at the time. His permanent replacement as PRHS boys' track and field coach was an African-American female over the age of 40.

On June 7, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Only the boxes for "age," "race," and "retaliation" are checked in Plaintiff's EEOC charge. On June 17, 2004, the EEOC closed the complaint file because it was not timely filed. (Reply Declaration of Ivan A. Mendez, Jr. ("Mendez Reply Decl."), Ex. GG.) On September 20, 2004, Plaintiff commenced this action.

## C. Disciplinary Charges and Reassignment

On or about December 13, 2005, several female students in Plaintiff's health class came forward with allegations that Plaintiff: (1) made inappropriate physical contact with one student; and (2) made sexually suggestive statements and other inappropriate comments concerning other students' weight, family, and religion. On December 14, 2005, two of the students brought their concerns to Assistant Principal Joan DiDomenico, who instructed the students to write their complaints and forwarded them to Assistant Principal Rossi. At the time, Rossi, as the senior Assistant Principal, was filling in for Principal Timothy Gannon who was away from school. DiDomenico notified Gannon of the situation by telephone. Gannon testified that, during that phone conversation, he instructed Rossi to remove herself from the investigation due to what he considered the

---

[3] Principal Graham testified, "I think it had gotten to the point [in 2003] where I was not getting anywhere with respect to his doing whatever he wanted to do, using his own set of rules, in other words, so it was the combination of his irresponsibility together with the insubordination." (See Mendez Decl., Ex. F, Graham Dep. 25:4-9.)

"negative" history between her and Plaintiff and to ensure that the investigation was carried out in an objective, impartial manner. (Mendez Decl., Ex. X, Gannon Dep. 17:23-18:5.) Assistant Principal Andrew Greenfield immediately referred the matter to the DOE's Office of Special Investigations ("OSI"), a neutral investigator with the power of subpoena that is unaffiliated with a specific high school.

Pursuant to the recommendation of OSI Investigator Dennis Boyles, Plaintiff was removed from the classroom on January 3, 2006 as a precautionary measure pending the investigation and transferred to the DOE's Staten Island reassignment center (a.k.a. the "Rubber Room"). Boyles interviewed or received statements from approximately ten students in Plaintiff's class. He also met with PRHS administrators and interviewed the Plaintiff. At the conclusion of his two-month investigation, Boyles concluded in a February 28, 2006 memorandum that the allegations against the Plaintiff were substantiated. (See Mendez Decl., Ex. R, May 5, 2006 Letter from Gannon to Plaintiff, Attachment A.) He recommended that Plaintiff's case be referred to the DOE in order to determine whether disciplinary charges should be filed against Plaintiff.

On his 2005-2006 annual performance review, Plaintiff received an overall unsatisfactory rating. (Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. II.) On June 21, 2006, he was served with disciplinary charges. The record is silent as to whether these charges are still pending and whether Plaintiff has ever instituted proceedings to challenge or rebut the OSI's findings. Plaintiff amended his complaint on October 11, 2006 to state a claim for retaliation based on his reassignment and investigation.

## DISCUSSION

**I. Summary Judgment Standard**

### A. Rule 56

A motion for summary judgment shall be granted if the pleadings demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).  The moving party initially bears the burden of demonstrating that no genuine issues of material fact remain. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once this showing is made, the nonmoving party may not rely solely on "[c]onclusory allegations, conjecture, and speculation," <u>Niagara Mohawk Power Corp. v. Jones Chem. Inc.</u>, 315 F.3d 171, 175 (2d Cir. 2003) (internal citations and quotation marks omitted), but must present specific evidence in support of its contention that there is a genuine dispute as to the material facts. Fed. R. Civ. P. 56(e).  The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 127 S. Ct. 1769, 1776 (2007) (citing Fed. R. Civ. P. 56(c)).

### B. Local Civil Rule 56.1

Local Civil Rule 56.1 requires that a party opposing a summary judgment motion oppose the movant's Local Civil Rule 56.1 statement or the allegations set forth in that

statement will be deemed true. See Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir.

2003). The nonmovant's response must controvert those allegations the nonmovant

believes to be at issue paragraph by paragraph. Local Civil Rule 56.1(c). "A non-moving

party's failure to adhere to Local Rule 56.1(b) can prove fatal because '[c]ourts in this

circuit have not hesitated to deem admitted the facts in a movant's Local Rule 56.1

Statement that have not been controverted by a Local Rule 56.1 statement from the non-

moving party.'" Liles v. N.Y. City Dep't of Educ., 516 F. Supp. 2d 297, 308 (S.D.N.Y.

2007) (quoting Gadsden v. Jones Lang LaSalle Ams., Inc., 210 F. Supp. 2d 430, 438

(S.D.N.Y. 2002)); see also Millus v. D'Angelo, 224 F.3d 137, 138 (2d Cir. 2000) (per

curiam) (finding summary judgment "appropriate" in light of non-moving party's failure

to comply with Local Rule 56.1(b)); Global Vision Prods., Inc. v. Pfizer Inc., 04 Civ.

9198 (LAK), 2006 WL 344757, at **2-3 (S.D.N.Y. Feb. 14, 2006) (providing

comprehensive review of Local Civil Rule 56.1 standard and deeming facts admitted

because non-moving party did not submit a proper counter-statement of facts).

## II.  Plaintiff's Non-Compliance with Local Civil Rule 56.1

Defendants filed a properly-sourced 82-paragraph Local Rule 56.1 Statement

("Def. 56.1") in support of their motion. While Plaintiff submitted a document entitled

"Local Rule 56.1 Statement of Undisputed Facts" ("Pl. 56.1"), his 33-paragraph response

neither tracks Def. 56.1, nor admits or denies facts set forth in Def. 56.1. Plaintiff's

submission is, therefore, in clear violation of Local Rule 56.1(b). See Liles, 516 F. Supp.

2d at 308.[4] By failing to respond appropriately to Def. 56.1, Plaintiff provides no

---

[4] Plaintiff's failure to abide by Local Civil Rule 56.1 is particularly egregious in light of the holding of
Magistrate Judge Theodore H. Katz in Liles, 516 F. Supp. 2d 297. The plaintiff in that action was
represented by the same counsel as the plaintiff here in an action against the same defendants raising many

guidance with regard "to evidence which may support that party's contention that a certain fact is not in dispute," thereby undermining the very purpose of the Rule. Rodriguez v. Schneider, No. 95 Civ. 4083 (RPP), 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999).

In light of this failure, the Court will deem as admitted the factual assertions contained in Def. 56.1 insofar as they are supported by accurate citations to admissible evidence.

## III. Title VII and ADEA Non-Retaliation Claims

Under both Title VII and the ADEA, a private plaintiff has 300 days from the occurrence of an adverse employment action to file charges with the EEOC. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); see also McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 213 (2d Cir. 2006); Morris v. Ales Group USA, Inc., No. 04 Civ 8239 (PAC) (THK), 2007 WL 1893729, at *13 (S.D.N.Y. June 29, 2007). Plaintiff filed his EEOC charge on June 7, 2004. (See Mendez Decl., Ex. Z, EEOC Charge.) Thus, any claims that pre-date August 12, 2003 are time-barred, including: (1) Plaintiff's claim concerning his removal as PRHS boys' track coach on February 27, 2003; and (2) Plaintiff's claims of discriminatory treatment preceding his removal. Plaintiff argues, however, that the doctrines of waiver, equitable estoppel, and equitable tolling excuse his failure to timely file. The Court disagrees.

### A. Waiver and Equitable Estoppel

First, Plaintiff argues unpersuasively that Defendants waived their limitations defense by failing to raise it either before the EEOC or in their answer to Plaintiff's

---

of the same issues as the case sub judice. Upon ruling that the plaintiff failed to comply with Local Civil Rule 56.1, Magistrate Judge Katz deemed the defendants' statement of facts admitted. See id. at 308-09.

complaint. When Plaintiff's counsel made substantially the same arguments in <u>Liles</u>, Magistrate Judge Katz rejected them out of hand. 516 F. Supp. 2d at 314 n.19. Defendants' failure to raise a limitation defense before the EEOC did not constitute waiver, <u>see</u> <u>id.</u>, and Defendants' fourth affirmative defense in Defendants' Answer to the Second Amended Complaint clearly asserts a statute of limitations defense.

### B. Equitable Tolling

The Court also rejects Plaintiff's contention that the limitation period on his discrimination claims should be tolled because he did not receive proper training or notification regarding the EEOC complaint process. "The essence of the doctrine of equitable tolling is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action." <u>Williams v. City of N.Y.</u>, No. 99 Civ. 0078 (NRB), 2001 WL 770933, at *3 (S.D.N.Y. July 9, 2001) (citing <u>Dillman v. Combustion Eng'g., Inc.</u>, 784 F.2d 57, 60 (2d Cir. 1986)). The doctrine is invoked only in "rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." <u>Zerilli-Edelglass v. N.Y. City Transit Auth.</u>, 333 F.3d 74, 80 (2d Cir. 2003) (internal citations and quotations omitted). In addition, "the party seeking the benefit of the equitable tolling must have acted reasonably to discover the facts and to protect its rights." <u>Bowers v. Transp. Maritima Mexicana, S.A.</u>, 901 F.2d 258, 264 (2d Cir. 1990).

The evidence does not support a finding that Plaintiff was either unaware of his discrimination claims or that he was prevented in some way from exercising those claims. In fact, it suggests just the opposite. Both Principals Graham and Gannon testified that PRHS had an EEOC representative or liaison, known as an "LEOC," and that there were postings indicating the identity of the LEOC. (<u>See</u> Mendez Reply Decl., Ex. HH, Gannon

Dep. 42:25-43:17; Ex. II, Graham Dep. 18:15-19:16.)  Principal Graham also testified

that "at the beginning of the year faculty conference, [he] would always introduce [the

LEOC], should any staff member have any issues that they needed to address in that

area." (Mendez Reply Decl., Ex. II, Graham Dep. 18:19-23.)  Even assuming that

Plaintiff received absolutely no training or instruction regarding the EEOC complaint

process, his ignorance would not toll the limitations period.  There is simply no indication

that the DOE prevented Plaintiff from seeking redress nor that Plaintiff took proactive

measures to safeguard his rights.

      Accordingly, Plaintiff's non-retaliation Title VII and ADEA discrimination

claims are time-barred and dismissed with prejudice.

## IV.  Equal Pay Act Claim

      The EPA prohibits employers from paying differential wages to employees of the

opposite sex for equal work. 29 U.S.C. § 206(d)(1).  To state a prima facie EPA claim for

disparate compensation, the plaintiff must identify "a comparator employed by the same

employer and of the opposite gender." Morris v. Fordham Univ., No. 03 Civ. 0556

(CBM), 2004 WL 906248, at *4 (S.D.N.Y. Apr. 27, 2004).

      Plaintiff presents no competent evidence of a single female comparator who was

paid at a rate higher than he was paid.  He makes only an unsubstantiated claim that he

"received less pay and money to perform his job" than the girls' gymnastics coach,

allegedly his "equal" in terms of skill, effort, and responsibility. (Pl.'s Br. Opp'n to Defs.'

Mot. for Summ. J. 9.)  Plaintiff's sole "evidence" of disparity is an exhibit comprised of

three PRHS athletics budgets,[5] which list the annual funding allocations for each

---

[5] Plaintiff offers the budgets for the 2000-01, 2002-03, and 2003-04 school years. (See Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. BB.)  There is no explanation for the absence of the 2001-02 budget.

individual sport. (See Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. BB.)  The budgets are

silent on how the coaches were compensated. (Id.)  The offered evidence is therefore

irrelevant.  In fact, as Plaintiff conceded at his deposition, the coaching pay schedule

contained in the CBA provides that all coaches are paid at the same rate without regard to

race, age, gender or sport coached. (Mendez Decl., Ex. B, CBA Article 15A.)  Absent

any other evidence that Plaintiff was paid less than a similarly-situated female

comparator, no reasonable jury could find for Plaintiff on his EPA claim.  Consequently,

Plaintiff's EPA claim is dismissed with prejudice.

**V.  Title IX Claims Related to the Termination of Plaintiff as Track Coach**

Title IX provides, in pertinent part, that "[n]o person in the United States shall, on

the basis of sex, be excluded from participation in, be denied the benefits of, or be

subjected to discrimination under any education program or activity receiving federal

financial assistance." 20 U.S.C. § 1681(a).  The Supreme Court has held that Title IX

implies a private right of action to enforce its prohibition on intentional sex

discrimination. Cannon v. Univ. of Chi., 441 U.S. 677, 690-93 (1979).  This private cause

of action encompasses "[r]etaliation against a person because that person has complained

of sex discrimination." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).

Here, Plaintiff maintains claims under Title IX for both discrimination and

retaliation, which the Court addresses in turn.

**A.  Discrimination**

While Title IX includes a private right of action, the Second Circuit has not ruled

whether an employee of a federally-funded educational institution can use Title IX to

seek redress for employment discrimination on the basis of sex. See Mehrhoff v. William

Floyd Union Free School Dist., No. 04 Civ. 3850 (JS) (MLO), 2005 WL 2077292, at *10 (E.D.N.Y. Aug. 22, 2005) (citing Torres v. Pisano, 116 F.3d 625, 630 (2d Cir. 1997)). While some courts in this district have "held that Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex," Vega v. State Univ. of N.Y. Bd. of Trs., No. 97 Civ. 5767 (DLC), 2000 WL 381430, at *3 (S.D.N.Y. April 13, 2000), others locate "an intent on the part of Congress to have Title IX serve as an additional protection against gender-based discrimination," Henschke v. N.Y. Hosp.-Cornell Med. Ctr., 821 F. Supp. 166, 172 (S.D.N.Y. 1993). The Court need not decide this issue because Plaintiff plainly fails to introduce credible evidence to back his Title IX discrimination claim.

Plaintiff alleges that Defendants violated Title IX because they paid Plaintiff less than other similarly-situated coaches and gave other PRHS teams more institutional support, equipment, allowances, and financial assistance. The record simply does not support this contention. Defendants have established by admissible evidence—namely, the yearly PRHS athletic budget—that, between 2000 and 2004, PRHS's boys' and girls' teams received proportionate, and very often equal, funding. (Mendez Decl., Ex. E.) Moreover, Assistant Principal Rossi and former Principal Robert Graham testified that they allocated funds to PRHS's teams based on: (1) the number of students on each team; and (2) the team's needs and requirements. Absent any countervailing evidence aside from Plaintiff's self-serving and unsupported assertions, the Court must conclude that these factors, not the gender of PRHS students, determined how the funds were allocated. Thus, Plaintiff's Title IX discrimination claims are dismissed.

**B. Retaliation**

Title IX retaliation claims are analyzed using the same "burden-shifting" framework set forth for Title VII cases by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) and <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981). <u>See</u> <u>AB ex rel. CD v. Rhinebeck Cent. Sch. Dist.</u>, 224 F.R.D. 144, 153 (S.D.N.Y. 2004). The plaintiff must make out a prima facie case of retaliation by showing: "1) that she was engaged in protected activity by opposing a practice made unlawful by Title [IX]; 2) that the employer was aware of that activity; 3) that she suffered adverse employment action; and 4) that there was a causal connection between the protected activity and the adverse action." <u>AB</u>, 224 F.R.D. at 153. The burden of proof at the prima facie stage is <u>de</u> <u>minimis</u>. <u>See</u> <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 (2d Cir. 2000). If the plaintiff meets this burden, the defendant must offer a legitimate non-discriminatory reason for its actions. <u>See</u> <u>Holcomb v. Iona Coll.</u>, 521 F.3d 130, 138 (2d Cir. 2008). If the defendant puts forth such a reason, the plaintiff must demonstrate that there is sufficient evidence for a reasonable juror to find that the reason offered by the defendant is a mere pretext for discrimination. <u>See</u> <u>Weinstock</u>, 224 F.3d at 42.

Plaintiff alleges that Assistant Principal Rossi retaliated against him upon learning that he had taken his complaints about funding directly to Principal Graham. He claims Rossi repeatedly frustrated his stewardship of the boys' track program and, ultimately, fired him as the head coach on February 27, 2003. For ease of analysis, the Court assumes that Plaintiff has made out a prima facie case of retaliation and proceeds directly to the last two steps in the "burden-shifting" analysis. <u>See, e.g.</u>, <u>Peterson v. City Coll.</u>, 32

F. Supp. 2d 675, 685 (S.D.N.Y. 1999); <u>Evans v. Golub Corp.</u>, 29 F. Supp. 2d 194, 201

(S.D.N.Y. 1998); <u>see</u> <u>also</u> <u>Lapsley v. Columbia Univ.</u>, 999 F. Supp. 506, 515 (S.D.N.Y.

1998) (listing cases in which the court assumed, without detailed analysis, that the

plaintiff established a prima facie case of discrimination).

**1. Defendants' Non-Retaliatory Justifications**

Defendants contend that there were legitimate, non-retaliatory reasons for

Plaintiff's removal from the coaching position.  The record is replete with examples of

Plaintiff's failure to follow the rules set forth by his supervisors, the PSAL, and the DOE.

He received multiple written reprimands for, <u>inter</u> <u>alia</u>, arguing with a student-athlete's

parent, failing to supervise his athletes, entering ineligible athletes in PSAL competitions,

failing to obtain proper consent forms for student eligibility, and pressuring other

teachers into changing grades for his athletes.  Principal Graham highlighted several of

these incidents in his February 27, 2003 letter informing Plaintiff of his termination.

(Mendez Decl., Ex. Q.)  Defendants submit that, by persisting in this course of conduct,

Plaintiff endangered not only the safety and well-being of his students, but also the future

of the entire PRHS boys' track and field program.  It is Principal Graham's unchallenged

testimony that Plaintiff was given numerous opportunities over the years to comply with

the applicable rules but simply refused to do so. (<u>See</u> Mendez Decl., Ex. F, Graham Dep.

25:4-18.)  Defendants contend that Plaintiff's termination was a matter of "when," not

"if."  Accordingly, Defendants have articulated a bona fide reason for terminating

Plaintiff's coaching position.

## 2. Plaintiff's Evidence of Pretext

Plaintiff fails to specifically challenge any of Defendants' justifications as "pretext." Instead, he repeats the same allegations he levied in his complaint. For instance, he points out again that he did not receive an unsatisfactory rating in any of his 26 years of coaching at PRHS. His only "new" evidence that can be considered rebuttal is the signed statement of Roberta Newman, one of the teachers Plaintiff admittedly approached about altering a grade, which states that Plaintiff did not "harass" her into making the change. (See Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. AA.) The statement does not address Assistant Principal Rossi's testimony that under no circumstances were coaches to approach teachers to question athletes' grades. (See Mendez Decl., Ex. D, Rossi Dep. 32:16-33:13.) Rossi stated that she circulated notice of this policy to PRHS staff every year. (See id.)

Plaintiff's only other "evidence" of pretext is his self-serving, uncorroborated account of several allegedly retaliatory actions taken by Assistant Principal Rossi. Relying on excerpts from the depositions of both Rossi and Graham, Plaintiff alleges that Rossi: (1) placed a call to PSAL officials to verify the eligibility of PRHS track athletes; (2) barred Plaintiff from using several rooms at PRHS, including the weight and equipment rooms, ostensibly for his failure to obtain a permit; (3) denied Plaintiff's request for an assistant track coach; (4) denied transportation funding for track meets; (5) disposed of Plaintiff's classroom materials, purportedly because he refused to keep an orderly classroom; and (6) denied Plaintiff an opportunity to coach the girls' track team when its coach resigned. A fair reading of the deposition transcripts, however, demonstrates that Rossi, as head of the athletic department, was well within her authority

to take these measures and provided a coherent, legitimate explanation for each.
Certainly, Plaintiff provides no evidence that these actions were pretextual. This suggests
that the retaliatory spin Plaintiff gives these actions is entirely of his own creation; there
is certainly no basis from which to infer that Rossi's actions were motivated by an
improper retaliatory motive.

### 3. Plaintiff Has Not Met His Burden

Defendants have established that Plaintiff's removal from the coaching position
was more than amply justified by his repeated failure to adequately supervise students
and abide by PRHS and PSAL rules. In rebuttal, Plaintiff offers little more than his own
assessment of his performance as a track coach, relying on irrelevant commentary and
allegations. In order to support his claims, Plaintiff must do more than simply disagree
with Defendants' decisions. See Jimoh v. Ernst & Young, 908 F. Supp. 220, 226
(S.D.N.Y. 1995) ("As a matter of law, an employee's disagreement with an employer's
business decision is insufficient to prove discriminatory conduct.")

Plaintiff also makes much of the fact that, prior to his removal as track coach, he
had never received an unsatisfactory evaluation. This is insufficient to establish pretext.
See Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 718 (2d Cir. 1994); accord
Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998); Shabat v. Blue Cross Blue
Shield of Rochester Area, 925 F. Supp. 977, 988 (W.D.N.Y. 1996) ("[P]rior good
evaluations alone cannot establish that later unsatisfactory evaluations are pretextual. To
hold otherwise would be to hold that things never change, a proposition clearly without a
basis in reality." (internal quotations and citations omitted)).

In addition, Plaintiff completely fails to link his termination to his complaints regarding funding. He does not challenge Assistant Principal Rossi's testimony that Plaintiff complained about funding for almost six years prior to his termination. This suggests that, if Rossi sought to punish Plaintiff, she could have done so years earlier. Nor does Plaintiff explain why he was singled out for termination when, as Rossi testified, "all the other coaches" made similar complaints about funding. (Mendez Decl., Ex. D, Rossi Dep. 55:3-4.) There is absolutely no evidence in the record that other PRHS coaches were terminated for such behavior. The obvious explanation is that Plaintiff's termination had nothing to do with funding and everything to do with his unprofessional behavior and failure to abide by applicable rules and regulations. Absent any evidence to make this key causal connection, Plaintiff's claim must fail.

Based on the foregoing, the Court finds that no reasonable jury could conclude that Plaintiff's termination as the boys' track coach was an impermissible act of retaliation.

## VI. Title VII & Title IX Claims Related to Plaintiff's Reassignment

Plaintiff also contends that Defendants impermissibly retaliated against him in violation of both Title VII and Title IX when he was stripped of his teaching duties and reassigned to the "Rubber Room" in January 2006. He also maintains that the OSI investigation into students' allegations of improper behavior on the part of Plaintiff was part of a conspiracy by PRHS administrators to justify his reassignment and ruin his career.[6]

---

[6] Absent any indication that Plaintiff challenged these disciplinary charges before the DOE or in a subsequent Article 78 proceeding, the Court is reluctant to address them for the first time here.

As stated above, courts apply the same analytical framework to both Title VII and Title IX claims for retaliation. See Weinstock, 224 F.3d at 42 n.1. In order to state a prima facie case of retaliation, a plaintiff must demonstrate, inter alia, a causal connection between the protected activity and the adverse action. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998). This "causal connection may be established either indirectly by showing that the protected activity was followed closely by discriminatory treatment, . . . or directly through evidence of retaliatory animus directed against a plaintiff by the defendant." Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991) (internal quotations and citations omitted).

Here, Plaintiff fails to establish a requisite causal connection between his initiation of the present action—the protected activity—and his administrative transfer—the adverse action. He provides no reliable direct evidence of retaliatory animus. He alleges only that Assistant Principal Rossi made several retaliatory comments in Plaintiff's presence; however, none of the comments Plaintiff complains of were directed at him, made reference to his complaint, or were, in fact, retaliatory at all. (See Mendez Decl., Ex. BB, Bastian Dep. 322:21-328:9.)

Plaintiff also fails to establish a causal nexus indirectly. Causation cannot be inferred unless the temporal proximity between the protected activity and an adverse employment action is "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001). Here, more than fifteen months elapsed between the time Plaintiff filed his complaint on September 20, 2004 and his removal from the classroom on January 3, 2006. While there is no bright line rule to determine what is sufficiently close in time, the Second Circuit has consistently held that passages of time exceeding as little as three

months are too long to support the inference of a causal connection. See Chang v. Safe Horizons, 254 F. App'x 838, 839 (2d Cir. 2007) (holding termination that occurred almost one year after discrimination complaint undermined any causal nexus based on temporal proximity); Chamberlin v. Principi, 247 F. App'x 251, 254 (2d Cir. 2007) (holding passage of five months was insufficient to establish temporal proximity between protected activity and alleged acts); Butler v. Raytel Med. Corp., 150 F. App'x 44, 47 (2d Cir. 2005) (holding passage of one year was inadequate to establish causation by temporal proximity).  Clearly, a fifteen-month gap is too long to establish a causal link, especially in the absence of any other evidence of retaliatory motive.  Accordingly, Plaintiff has failed to establish a prima facie case of retaliation under either Title VII or Title IX and these claims are hereby dismissed with prejudice.

## VI. Breach of Implied Covenant of Good Faith and Fair Dealing

Having granted summary judgment as to all of Plaintiff's federal claims, the Court declines pursuant to 28 U.S.C. § 1367(c) to exercise its supplemental jurisdiction over Plaintiff's pendent state claim for Defendants' alleged breach of the implied covenant of good faith and fair dealing. See Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006); see also Travelers Ins. Co. v. Keeling, 996 F.2d 1485, 1490 (2d Cir. 1993) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)).  The Court dismisses this claim without prejudice to its renewal in state court.

## CONCLUSION

In light of the foregoing, Defendants' motion for summary judgment is GRANTED in its entirety. The Clerk of the Court is ordered to terminate the present motion and close this case.

Dated: New York, New York
     July 29, 2008

SO ORDERED

PAUL A. CROTTY
United States District Judge